UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS RYAN HEMSHER<br><br>Defendant. | 4:16-CR-40070-02-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Nicholas Ryan Hemsher, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 460. Plaintiff, the United States of America, opposes the motion. Docket 468. For the following reasons, the court denies the defendant's motion for compassionate release.

## BACKGROUND

On February 24, 2017, Hemsher was found guilty of possession of stolen firearms in violation of 18 U.S.C. § 922(j) and felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Docket 285. On May 15, 2017, the court sentenced Hemsher to 120 months in custody followed by three years of supervised release. Docket 340 at 2-3.

Hemsher is incarcerated at FCI Oxford, a medium security federal correctional institution with an adjacent minimum security satellite camp in Oxford, Wisconsin. *See FCI Oxford,* Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/oxf/ (last visited Dec. 12, 2022). The total population at FCI Oxford is 1,197 persons. *See id.*

On March 17, 2022, the warden of FCI Oxford denied Hemsher's request

for a reduction in sentence. Docket 470-1 at 1. Hemsher submitted a motion for compassionate release on June 16, 2022. Docket 460. In support of his motion, Hemsher argues that his medical conditions, family circumstances, and the COVID-19 pandemic warrant compassionate release. Docket 460 at 6-9; *See* Dockets 470, 474.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a "danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2021). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Hemsher argues that the COVID-19 pandemic, the current conditions at

FCI Oxford, his medical conditions, and his family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 460 at 6-9; *See* Dockets 470, 474.

I. **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Hemsher submitted a letter from the warden denying his request for a reduction in sentence. Docket 470-1 at 1. Accordingly, the court will presume Hemsher has satisfied the administrative exhaustion requirement and will review the matter on the merits.[1]

II. **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples. " *See* 28 U.S.C. § 994(t). The Sentencing Commission affirms that rehabilitation alone does not constitute an extraordinary and compelling

---

[1] The United States claimed in their reply brief that Hemsher had not exhausted his administrative remedies. Docket 468 at 5-6. Hemsher refutes these claims in his response submitted on August 8, 2022 and enclosed a denial letter from the warden of FCI Oxford. Docket 470-1 at 1. The United States did not file a response to Hemsher's brief.

3

reason. *Id.* To provide some further guidance, the Sentencing Commission limited "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, deterioration of one's physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D). The Sentencing Commission also asserts that the "foreseeability of extraordinary and compelling reasons" does not exclude one from consideration for a reduction in sentence. USSG § 1B1.13, cmt. n.2.

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in previous orders. *E.g.*, *United States v. Kenefick*, 5:19-CR-50058-01-KES, 2022 WL 1295898, at *2-3 (D.S.D. Apr. 13, 2022); *United States v. Beall*, 4:15-CR-40080-01-KES, 2022 WL 1202602, at *2-3 (D.S.D. Apr. 22, 2022); *United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG §1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g.*, *Kenefick*, 22 WL 1295898, at *3.

Hemsher contends that the COVID-19 pandemic, his health conditions,

and family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 460 at 6-9; *See* Dockets 470, 474. The court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the family circumstance category, USSG § 1B1.13 Note 1(C), and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Hemsher has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(i)(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Dec. 6, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver

disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as a type of disability that makes it more difficult to do certain activities or interact with the world or people who need help with self-care or daily activities, ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or possibly hypertension), HIV infection, immunocompromised condition or weakened immune system due to a medical condition or treatment for a condition (such as people who have cancer and are on chemotherapy, a solid organ transplant and are taking medications to keep their transplant, taking certain types of medicines for long periods of time, and having a life-long condition), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnant and recent pregnant people, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant (bone marrow transplant), stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

      The court has reviewed the medical records submitted in this case.

Hemsher is diagnosed with major depressive disorder, antisocial personality disorder, borderline personality disorder, and a prior COVID-19 infection. Docket 467 at 14, 25. He is not taking any prescribed medications for his conditions. *See generally* Docket 467.

Hemsher's medical records classify his major depressive order as, "Recurrent Episode: In Partial Remission[.]" *Id.* at 14. The medical records do not reflect a classification for his antisocial personality disorder, nor his borderline personality disorder. *Id.* at 14. In sum, Hemsher's medical records do not reflect any treatment for his mental health conditions. *See* Docket 467. Hemsher states that neither FCI Oxford health services nor the psychology department have approached him about his mental health. Docket 460 at 6. Hemsher details some low moments while incarcerated and his grievances towards health services for its lack of action regarding his mental health. *Id.* Hemsher feels discouraged to ask for assistance from health services because of other inmates' alleged prior experiences. *Id.* at 6-7.

On October 15, 2020, Hemsher tested positive for COVID-19 and was placed in isolation. Docket 467 at 18. He did not report experiencing any symptoms of COVID-19 and fully recovered on October 28, 2020. *Id.* at 8, 39. While incarcerated, Hemsher has received three Moderna COVID-19 vaccines. *Id.* at 28.

After reviewing Hemsher's medical conditions, the court is not convinced that his medical conditions satisfy the criteria set by the medical conditions category, USSG § 1B1.13 Note 1(A). Although Hemsher does suffer from health conditions identified by the CDC, his medical records are short in length and list very few clinical appointments which suggest that he is in adequate health.

Docket 467. The court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. Hemsher's health conditions do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Moreover, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 12, 2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, amongst others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See id.* Since March 26, 2020 to the present, 50,844 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

The court believes Hemsher's medical conditions are appropriately managed at FCI Oxford, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that FCI Oxford had a COVID-19 outbreak does not negate such conclusions. The data for FCI Oxford shows a COVID-19 outbreak that was ultimately contained. *See COVID-19 Coronavirus*. There were no deaths, as a result, and 500 inmates have recovered. *Id*. This persuades the court that FCI Oxford has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to

appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See id.* As of December 12, 2022, 342,173 doses have been administered systemwide. *Id.* At FCI Oxford, 828 inmates were fully inoculated as of December 12, 2022. *Id.* Hemsher received his first dose of the COVID-19 Moderna vaccine on March 30, 2021, a second dose on April 29, 2021, and a third dose on December 25, 2021. Docket 467 at 28. By being vaccinated, Hemsher has obtained additional protection against COVID-19.

Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of December 12, 2022, the BOP reported only 189 federal inmates have confirmed positive test results for COVID-19 nationwide. *See COVID-19 Coronavirus.* There are currently over 144,000 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Hemsher's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Family Circumstances Category, Note 1(C)

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 1(C), the defendant must demonstrate one of the following: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor… children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for

9

the spouse or registered partner." Hemsher claims that two of his children were abandoned by their mother. Docket 470 at 8; Docket 474 at 1. He informs the court that his mother is the current caretaker of his "eldest son", who is a minor. Docket 470 at 8. Hemsher argues that his mother does not have the resources to take care of his son resulting in him being the only available caretaker. *Id.* at 8-9. Additionally, Hemsher states that he has been in discussions with Child Protective Services (CPS) regarding custody of his minor son, O.W. Docket 474 at 1. Hemsher states that CPS has launched an investigation against O.W.'s mother due to allegations of child abandonment. *Id.* at 1-3. He adds that at the conclusion of the investigation, CPS will require Hemsher's DNA to establish paternity. *Id.* Once Hemsher is deemed the father, CPS will have no choice but to make O.W. a "ward of the state" due to Hemsher's incarceration. *Id.* at 2.

For the purposes of Note (1)(C), the family circumstances category specifically references care needed for minor children or a spouse. *See* USSG § 1B1.13, cmt. n.1(C). Hemsher identified his mother as his eldest son's caretaker. Docket 470 at 8. Hemsher has not submitted any documents to support his claim aside from his own statements regarding his alleged minor child, O.W. Dockets 460, 470, 474. He submitted a copy of a complaint filed in the Second Judicial Circuit in Minnehaha County for child support and a related paternity affidavit that references a different child. Docket 470-1 at 6-7. The documents do not show that any of Hemsher's children are without a caregiver. *Id.* Consequently, Hemsher has failed to meet his burden under USSG § 1B1.13 Note 1(C).

### C. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). After considering the ongoing COVID-19 pandemic combined with Hemsher's medical conditions and his family circumstances, the court is not convinced that "extraordinary and compelling reasons" exist to release Hemsher from custody early.

## III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors further show that compassionate release is not warranted. Hemsher was found guilty by a jury of being in possession of stolen firearms and being a felon in possession of firearms. Hemsher provided stolen firearms to a co-defendant and instructed that they be sold. Docket 331 ¶ 8. The co-defendant, who received the firearms, stated that he was concerned about his safety if he did not comply with Hemsher's demands. *Id.* A search warrant of the co-defendant's apartment produced a duffel bag containing six firearms and one separate firearm in the home. *Id.* ¶ 9. When the co-defendant was interviewed, he stated that the firearms obtained from his apartment were Hemsher's. *Id.* ¶ 11.

Law enforcement observed Hemsher's vehicle outside the co-defendant's home and began to trail Hemsher, which led to a high-speed pursuit and ultimately Hemsher's arrest. *Id.* ¶ 10-11. An additional firearm was found in Hemsher's vehicle. *Id.* ¶ 11. At the conclusion of the investigation, eight stolen firearms were recovered. *Id.*

The offense level was calculated as 24 and Hemsher was in criminal

history category VI. *Id.* ¶¶ 27, 63. At sentencing, the court found that Hemsher had obstructed justice and he received an additional two points, resulting in a total offense level of 26. Docket 356 at 21. Hemsher's guideline range was 120-150 months in custody. *Id.* The court sentenced Hemsher to 120 months in custody on both counts to run concurrently. Docket 340 at 2. After careful consideration, the court concludes Hemsher's sentence of 120 months continues to be appropriate for the seriousness of the crime to which he was found guilty.

## CONCLUSION

Hemsher has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for compassionate release under the First Step Act (Docket 460) is denied.

Dated December 12, 2022.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE